**Ramsey Ramiro MUNIZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 1415.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 21, 1978.

Rehearing Denied Jan. 11, 1979.

Armando Cavada, Raul Garcia, Garcia, Cavada, Gutierrez & Garcia, Alice, for appellant.

Linda A. Marchesseau, State Bar of Texas, Austin, for appellee.

## OPINION

NYE, Chief Justice.

This is a disbarment action. The State of Texas, acting through the Grievance Committee for District 11–A, instituted this disbarment suit against Ramsey Ramiro Muniz in the District Court of Nueces County. The trial court granted summary judgment in favor of the Grievance Committee disbarring Muniz, and enjoining him from the future practice of law. Muniz appeals.

On April 11, 1977, the Grievance Committee filed a formal complaint against defendant Muniz, (an attorney licensed in the State of Texas), seeking mandatory disbarment pursuant to Article 320a–1 § 6, Tex. Rev.Civ.Stat.Ann. (1973). The Grievance Committee alleged that the defendant had been convicted of the following three federal felony offenses all involving moral turpitude: 1) unlawfully conspiring to import marijuana; 2) conspiring to possess with intent to distribute marijuana; and 3) jumping bond. Certified copies of the federal court judgments and commitment orders for these three convictions were attached to the petition. In accordance with these allegations, the Grievance Committee prayed that the defendant be disbarred. Defendant Muniz filed a general denial.

On March 23, 1978, the Grievance Committee filed a motion for summary judgment stating there were no genuine issues

of fact to be decided. The motion alleged that the trial court was required to enter a judgment disbarring the defendant because the summary judgment proof established as a matter of law that defendant had been convicted of three felony offenses involving moral turpitude. At the hearing on plaintiff's motion, the trial court had before it the pleadings of both plaintiff and defendant; plaintiff's motion and supporting certified copies of the judgment and commitment orders; plaintiff's request for admissions, and the trial court's order deeming certain facts admitted. Defendant did not reply in opposition to plaintiff's motion for summary judgment.

The summary judgment proof established the following facts, among others:

1) Muniz was convicted in the United States District Court for the Western District of Texas pursuant to his plea of guilty entered on March 2, 1977, of willfully, knowingly and unlawfully conspiring, confederating and agreeing with others to import marijuana, a Schedule I controlled substance, in violation of 21 U.S.C.A. § 963 (1973). He was committed for a total of 15 years, 5 years imprisonment and 10 years parole. (Cause No. SA–76–CR–176).

2) He was also convicted pursuant to his plea of guilty entered on March 18, 1977, of conspiring to possess with the intent to distribute approximately 1,100 pounds of marijuana in violation of 21 U.S.C.A. §§ 846, 2 (1973) and committed to custody for a total of 5 years to run concurrently with the above sentence. (Cause No. 76–C–245).

3) Muniz was further convicted in the United States District Court pursuant to his plea of guilty entered on March 18, 1977 of bond jumping in violation of 18 U.S.C.A. § 3150 (1973). He was committed for a total of 5 years to run concurrently with the above sentences.

4) Muniz did not appeal from the above listed convictions and the sentences imposed were not probated.

5) Muniz was an attorney duly licensed in the State of Texas and a resident of Nueces County, Texas.

On July 20, 1978, the trial court entered a judgment which granted the Grievance Committee's motion for summary judgment and disbarred Muniz from the practice of law based on the three federal felony convictions involving moral turpitude. In addition, the trial court entered a permanent injunction which, in essence, enjoined defendant from future participation in certain legal work. Defendant brings forward two points of error on appeal complaining of the trial court's action in granting plaintiff's motion for summary judgment and in entering the permanent injunction.

In passing upon the points raised on this appeal, we shall be guided by the rules concerning summary judgments established by our State Supreme Court and Rule 166–A, Texas Rules of Civil Procedure. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.Sup.1970); *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41 (Tex.Sup.1965); *State Bar of Texas v. Semaan*, 508 S.W.2d 429, 433 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.).

Muniz was disbarred pursuant to Section 6 of the Texas State Bar Act, Tex.Rev.Civ. Stat.Ann. art. 320a–1 (1973) which provides, in relevant part, as follows:

"No disbarment proceeding shall be instituted against any attorney except in the district court located in the county of said attorney's residence, nor shall any attorney be suspended until such attorney has been convicted of the charge pending against him, in a court of competent jurisdiction in the county of such attorney's residence. Provided, however, upon proof of conviction of an attorney in any trial court of any felony involving moral turpitude . . . the district court of the county of the residence of the convicted attorney shall enter an order suspending said attorney from the practice of law during the pendency of any appeal from said conviction. An attorney who has been given probation after such conviction shall be suspended from the practice of law for the period of his probation.

*Upon proof of final conviction of any felony involving moral turpitude . . where probation has not been given or has been revoked, the district court of the county of the residence of the convicted attorney shall enter a judgment disbarring him."* (Emphasis added).

Muniz contends that "[t]he trial court erred in granting Motion for Summary Judgment disbarring duly licensed attorney upon proof of convictions in federal court prosecutions for: (1) conspiring to import marijuana, (2) conspiring to possess with intent to distribute marijuana, and (3) bond jumping." Muniz' major argument, under this point is that none of the enumerated felonies for which he was convicted are felonies involving moral turpitude.

The precise question of whether any of the crimes for which Muniz was convicted are felonies involving moral turpitude for the purpose of mandatory disbarment has not been addressed previously by the Texas courts. Other jurisdictions, however, considering similar questions, have established some general guidelines.

Moral turpitude has been defined as anything done knowingly contrary to justice, honesty, principle, or good morals. *In re Pontarelli,* 393 Ill. 310, 66 N.E.2d 83, 85 (1946); *In re Disbarment of Coffey,* 123 Cal. 522, 56 P. 448 (1899); *In re O'Connell,* 184 Cal. 584, 194 P. 1011 (1920); *Smith v. State,* 490 S.W.2d 902, 907 (Tex.Civ.App.— Corpus Christi 1972, writ ref'd n. r. e.). It has also been defined to be an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general. *Braverman v. Bar Association of Baltimore City,* 209 Md. 328, 121 A.2d 473 (1956); *In re O'Connell,* 184 Cal. 584, 194 P. 1011 (1920); *John's Vending Corp. v. Secretary of Revenue, Etc.,* 3 Pa.Cmwlth. 658, 284 A.2d 834, 837 (1971). The term implies something immoral in itself, regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude. Cf. *In re O'Connell,* 184 Cal. 584, 194 P. 1011 (1970). Immoral conduct is that conduct which is willful, flagrant, or shameless, and which shows a moral indifference to the opinion of the good and respectable members of the community. *In re Hicks,* 20 P.2d 896 (Okl.Sup. 1933); *Smith v. State,* 490 S.W.2d 902 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

Generally, in determining whether a crime committed by an attorney involves moral turpitude, consideration must be given to the fact that the illegal act was committed by an attorney as compared to a layman. An attorney must be held to a more strict standard than the layman because of the position of public trust which he enjoys. As such, his standard of conduct must be high. A lawyer assumes a position of responsibility to the law itself, and any serious disregard of the law by him or her is much more grave than that by the layman who may breach the law innocently or otherwise. A lawyer has always been regarded as an officer of the court. He is charged with obedience to the laws of this State and of the United States. *Cincinnati Bar Association v. Shott,* 10 Ohio St.2d 117, 226 N.E.2d 724, 733 (1967); *In re Clark's License Suspension,* 52 Cal.2d 322, 340 P.2d 613 (1959); *In re Anderson,* 195 N.W.2d 345, 348 (N.D.1972); *Matter of Fosaaen,* 234 N.W.2d 867, 869 (N.D.1975); *People v. Wilson,* 176 Colo. 389, 490 P.2d 954, 955 (1971). An attorney is also charged with the responsibility to maintain due respect for the judicial system and its rules of law. *State v. Hendrickson,* 139 Neb. 522, 298 N.W. 148 (1941). The question of whether a particular crime involves moral turpitude is to be determined by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law. *Braverman v. Bar Association of Baltimore City,* 209 Md. 328, 121 A.2d 473, 481 (1956); *In re Rothrock,* 16 Cal.2d 449, 106 P.2d 907 (1940). As stated by the United States Supreme Court in *Ex Parte Wall,* 107 U.S. 265, 274, 2 S.Ct. 569, 576, 27 L.Ed. 552 (1882):

". . . Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant;

and for him, of all men in the world, to repudiate and override the laws, . . argues recreancy to his position and office, . . . It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve. . . ."

In 1971, the Texas Supreme Court adopted a new Texas Code of Professional Responsibility for Lawyers, Title 14 App. Art. 12 § 8 (1973). Canon 1 provides: "A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession." Ethical consideration 1–5 cautions:

"A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to the law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."

Disciplinary rule 1–102 relating to the same Canon states:

"(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

\* \* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Attorneys who practice law in Texas are therefore charged with a very high standard of conduct not only with regard to the public generally but also in their relationships with the legal and judicial system.

One of the felonies for which Muniz was convicted was the felony of bond jumping in violation of 18 U.S.C.A. § 3150 (1969). This section provides in relevant part, as follows:

"Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than 5 years, or both, or . . . ."

Not all breaches of bail bond conditions give rise to criminal liability under this section. Only failures to appear as judicially ordered constitute bail jumping. *U. S. v. Bright,* 541 F.2d 471 (5th Cir. 1976), rehearing denied, 544 F.2d 518, cert. denied, 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780. In addition, mere proof of nonappearance, standing alone, is not sufficient to establish that the defendant who is charged with violating this section has acted "willfully in failing to appear" nor is a prima facie case made by the introduction of evidence that defendant violated a condition of his bond. *U. S. v. Reed,* 354 F.Supp. 18 (D.Mo.1973).

However by pleading guilty to the criminal indictments in question, Muniz admitted as true all of the necessary allegations to constitute violations of the criminal laws under which he was charged. See *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Littlejohn v. Hiatt,* 197 F.2d 334 (5th Cir. 1952); *State v. Nelson,* 551 S.W.2d 433, 435 (Tex. Civ.App.—San Antonio 1977, writ ref'd n. r. e.). Defendant's guilty plea therefore established an overt act of intentionally and willfully failing to appear before the court or a judicial officer as ordered a violation of a condition for his release from confinement under the bond pursuant to Chapter 207 of the U.S.C.A. Title 18.

All citizens, of course, are charged with the responsibility of abiding by the laws of the respective states and of the United States. An attorney, however, has additional moral and legal responsibility associ-

ated with his position of trust as an officer of the court. It is clear to us that Muniz' failure to appear as required before the designated court or judicial officer not only constituted a felony under federal law but also constituted a direct violation of the trust and confidence placed in him as an officer of the court. It is difficult to consider an offense committed by an attorney who is an officer of the court which is more destructive and prejudicial to the administration of justice than for one to willfully violate a court ordered appearance and thereby becoming a fugitive from justice. Muniz' failure to appear as required adversely reflects on his moral character to continue the practice of law. We conclude that Muniz was convicted of a felony involving moral turpitude as a matter of law. *In re Suspension of Tindall,* 60 Cal.2d 469, 34 Cal.Rptr. 849, 386 P.2d 473 (1963); *In the Matter of H. Albert Hyett, an Attorney at Law,* 61 N.J. 518, 296 A.2d 306 (1972); *In re Goode,* 58 N.J. 420, 278 A.2d 206 (1971); *In re Turco, Jr. v. Monroe County Bar Assoc.,* 46 A.D.2d 490, 363 N.Y.S.2d 349, 351, 360 (1975); *In re Birrell,* 13 A.D.2d 220, 215 N.Y.S.2d 293, 294 (1961).

Muniz' plea of guilty resulting in his final conviction of the felony offenses of willfully, knowingly and unlawfully conspiring with others to import a Schedule I controlled substance and his final conviction on his self-imposed guilty plea of conspiring to possess with intent to distribute approximately 1,100 pounds of a controlled substance are also felonies involving moral turpitude. This type of conduct affects the morals of the community in which he lives. It tends to lessen public confidence in the legal profession. We believe it to be morally reprehensible for a licensed attorney to be involved in this type of activity.

■ Muniz argues, however, that the trial court's judgment disbarring him is invalid because the Texas Penal Code does not contain prohibitions similar to those for which he was convicted under federal law. This contention is without merit. The language of section 6 above quoted expressly provides that "upon conviction . . . in

*any* trial court of *any felony* involving moral turpitude . . . ." Section 6, by its express terms, does not limit the trial court to a Texas state court nor the felony to a Texas state felony. We hold that the term "felony involving moral turpitude" is not restricted to a felony committed in violation of state law. See *State v. Estes,* 130 Tex. 425, 109 S.W.2d 167 (Tex.Comm'n.App.1937, opinion adopted); *State v. Nelson,* 551 S.W.2d 433 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). This view is consistent with the views other state courts considering the question. Compare: *In re Craig,* 12 Cal.2d 93, 82 P.2d 442 (1938).

■ Muniz also contends that his disbarment should be set aside because the trial court abused its discretion in imposing such a severe punishment. Muniz' pleas of guilty and his final conviction, without probation, of the felonies involving moral turpitude brings this case within the mandatory disbarment provisions contained in section 6 of the State Bar Act. Sanctions imposed in disciplinary proceedings for misconduct *other than* a final felony conviction involving moral turpitude are discretionary matters within the province of the trial court. Cf. *State v. Ingram,* 511 S.W.2d 252 (Tex.Sup.1974). But here abuse of discretion is not an issue. See *State v. Nelson,* 551 S.W.2d 433 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). Where the fact of a final conviction of a crime involving moral turpitude is grounds for disbarment, proof of the conviction may be made by simply introducing into evidence the records of the court rendering the conviction. See *State v. Laughlin,* 286 S.W.2d 278, 280 (Tex. Civ.App.—San Antonio 1955, writ ref'd n. r. e.); cf. *State v. Nelson,* 551 S.W.2d 433 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). The trial court properly granted the Grievance Committee's motion for summary judgment disbarring Muniz. Appellant's point of error one is overruled.

■ In point of error two, Muniz complains of the trial court's injunction as being too broad. The judgment pertinent to this point of error states as follows:

"It is further ORDERED, ADJUDGED, and DECREED that the Defendant, Ramsey Ramiro Muniz, be and is hereby permanently enjoined from doing any legal work whatsoever, including office work, investigative work, preparing legal papers or other legal documents or any other matter in connection with any legal work performed by him or any other attorney, provided that nothing herein contained shall be construed to prohibit Defendant from participating in the preparation of legal papers or other legal documents or other matters including legal work when such legal matters are prepared or participated in by him for his own proprietary interest in any transaction involving his own property, and provided further that nothing herein contained shall be construed to prohibit Defendant from doing any act or thing which might properly and legally be done by any other person not licensed to practice law in the State of Texas nor shall he office with or share office space with any one who is licensed to practice law in the State of Texas."

Muniz' contention that the trial court was without authority to enter *any* injunction in connection with disbarment proceedings has been rejected. See *Arnett v. State,* 304 S.W.2d 386–390 (Tex.Civ.App.—Eastland 1957, writ ref'd n. r. e.). It might be said that the necessity for an injunction in connection with this disbarment proceeding is unnecessary because the disbarment itself had the effect of revoking Muniz' license to practice law in the State of Texas. It is true that the act of disbarment does of itself prohibit a former attorney from practicing law, receiving legal fees and from holding himself out as an attorney. Therefore, the trial court's injunction should, if entered at all, enjoin Muniz from engaging in these prohibited activities. This is expressly set out in the State Bar Act, Tex. Rev.Civ.Stat.Ann. art. 320a–1 § 3 (Supp. 1978). Section 3 provides, in relevant part, as follows:

All persons who are now or who shall hereafter be licensed to practice law in this State shall constitute and be members of the State Bar, and shall be subject to the provisions hereof and the rules adopted by the Supreme Court of Texas; *and all persons not members of the State Bar are hereby prohibited from practicing law in this state. . . .*"

The injunction as written by the trial court may be overly broad and contain some inconsistencies as to what activities Muniz is prohibited from engaging in the future.

We note that the State Bar Rules also contain provisions to suppress, prohibit or prevent the unauthorized practice of law. See Title 14 App. art. 13 §§ 37–41 (1973). In addition, the disciplinary rules and ethical considerations related to Canon 3 of the Texas Code of Professional Responsibility for Lawyers prohibit a licensed attorney from assisting an unlicensed person from engaging in the unauthorized practice of law. See Title 14 App. art. 12, § 8 Canon 3, EC 3–1 through 3–9, DR–3–101 through 3–103 (1973). If, in the future, Muniz engages or threatens to engage in any specific unlawful practice of law, then the procedures under the State Bar Rules mentioned above can be easily instituted by the proper authorities including additional injunctive relief. See *Hexter Title & Abstract Co., Inc. v. Grievance Committee,* 142 Tex. 506, 179 S.W.2d 946 (1944); *Davies v. Unauthorized Practice Committee of the State Bar of Texas,* 431 S.W.2d 590 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.).

That portion of the trial court's judgment disbarring Muniz is hereby affirmed. That portion of the trial court's judgment granting an injunction is also affirmed subject to the following modification of the injunction which is hereby substituted for the trial court's injunction.

"It is further ORDERED, ADJUDGED and DECREED that the Defendant, Ramsey Ramiro Muniz, be and is hereby permanently enjoined from: 1) Practicing law; 2) holding himself out as an attorney at law; 3) performing any legal services for others; 4) accepting any fee directly or indirectly, for legal services; 5) holding himself out to others or by using his name, either orally or

in printed or written form, in conjunction with the words 'attorney at law,' 'counselor at law' or 'lawyer.' "

AFFIRMED AS MODIFIED.